ERIK BABCOCK, No. 172517
717 Washington St., 2d Floor
Oakland CA 94607
Tel:  (510) 452-8400
Fax:  (510) 201-2084
erik@babcocklawoffice.com

Attorney for Defendant
MIN-HAO WU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 5:21-00369 BLF |
| Plaintiff, | **DEFENDANT WU'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE** |
| v. | |
| MIN-HAO WU, | Date:   August 30, 2022 |
| Defendant. | Time:  9:00 a.m. |
| | Place:  Hon. Beth Freeman |

## **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………… 1

STATEMENT OF FACTS……………………………………………………… 1

SENTENCING ARGUMENT…………………………………………………….. 2

    A.  Seriousness of the Offense, Respect for the Law and Just Punishment……………2

    B.  Deterring Criminal Conduct and Protecting the Public……………………………3

    C.  Seriousness of the Offense, Respect for the Law and Just Punishment……………6

    D.  The Guideline Sentencing Range………………………………………………….. 7

        1.  Mr. Wu's Personal History and Characteristics…………………………    6

        2.  Mr. Wu Would Be An Extremely Vulnerable Inmate………………………..    6

        3.  A Downward Variance Is Necessary to Account for the Flaws in 2G2.2……..  9

            a.  2G2.2 Is Not Based On Empirical Data or National Experience……… 9

            b.  Because 2G2.2's Specific Characteristics Apply In Almost Every Case, It Fails to Meaningfully Measure Culpability………………………… 11

    E.  Avoiding Unwarranted Sentencing Disparities…………………………………… 13

        1.  Most Possession Offenses Are Not Sentenced Within the Guidelines………… 13

        2.  The Sentences Recommended by the Prosecution and Probation Would Create Unwarranted Sentencing Disparity And Are More Comparable With Sentences Imposed In Distribution Cases.

    F.  Providing Restitution………………………………………………………… 17

CONCLUSION……………………………………………………………………..18

EXHIBITS:

    Ex A: Photo of Matt with Family at Graduatio

    Ex B: Letters of Support from Family and Friends

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Gall v. United States*,
 552 U.S. 38, 52 (2007)……………………………………………… 2

*Kennedy v. Louisiana*,
 554 U.S. 407, 442 (2008) …………………………………………….. 2

*Kimbrough v. United States*,
 552 U.S. 85 (2007)………………………………………………… 9

*Koon v. United States*,
 518 U.S. 81, 111-12 (1996)………………………………………… 8

*Paroline v. United States*,
 572 U.S. 434 (2014)………… …………………………………….. 18

*Pepper v. United States*,
 562 U.S. 476, 491 (2011) …………………………………… 7

*Spears v. United States*,
  555 U.S. 261 (2009) …………………………………… 9

*Tapia v. United States*,
 564 U.S. 319, 326 (2011) …………………………………… 2

*United States v. Amezcua-Vasquez*,
 567 F.3d 1050, 1058 (9th Cir. 2009) …..……………………………….13

*United States v. Apodaca*,
 641 F.3d 1077, 1083 (9th Cir. 2011) …..……………………………..11

*United States v. Autery*,
 555 F.3d 864, 867-68 (9th Cir. 2009) …..……………………………14

*United States v. Bad Marriage*,
     392 F.3d 1103, 1114 (9th Cir. 2004) …..……………………………………5

*United States v. Bailey*,
     369 F. Supp. 2d 1090, 1097 (D. Neb. 2005) …..……………………………  16

*United States v. Barker*,
     771 F.2d 1362, 1365 (9th Cir. 1985) …..……………………………………...2

*United States v. Garcia*,
     340 F.3d 1013, 1020 (9th Cir. 2003)…………………………………………..8

*United States v. Budziak*,
     N.D. Cal. No. 5:08-cr-00284 EJD……………………….. …………………   17

*United States v. 6 Carty*,
     520 F.3d 984, 991 (9th Cir. 2008) (en banc) …..……………………………….2

*United States v. Cernik*,
     2008 WL 2940854, *8-9 (E.D. Mich. 2008) …..……………………………  16

*United States v. Chen*,
     N.D. Cal. 3:20-CR-00084-EMC…..……………………………………….. 1

*United States v. Crespo-Rios*,
     2015 WL 6394256, *1 (D.P.R. 2015) …..……………………………………16

*United States v. D.M.*,
     942 F. Supp. 2d 327, 329 (E.D.N.Y. 2013)……………………………………16

*United States v. Dorvee*,
     616 F.3d 174, 184 (2d Cir. 2010)………………………………………….....9

*United States v. Duhon*,
     541 F.3d 391 (5th Cir 2008)……………………………………………….  15

*United States v. E.L.*
  188 F.Supp. 3d 152 (E.D.N.Y. 2016)…………………………………….. 15

*United States v. Garcia*,
  340 F.3d 1013, 1020 (9th Cir. 2003)……………………………………..8

*United States v. Garcia DeLeon*,
  N.D. Cal. No. 4:21-cr-00052 YGR.…………………………………..8

*United States v. Grober*,
  624 F.3d 592, 608 (3d Cir. 2010)…………………………………… 9

*United States v. Hanson*,
  561 F. Supp. 2d 1004, 1009 (E.D. Wis. 2008)………………………… 12

*United States v. Henderson*,
  649 F.3d 955, 960-62 (9th Cir. 2011)……………………………………10

*United States v. Kainne*,
  N.D. Cal. 3:14-cr-00218 CRB………………………………… 15

*United States v. Mallatt*,
  2013 WL 6196946, *13-14 (D. Neb. 2013)………………………… 16

*United States v. Martin*,
  N.D. Cal. 17-cr-00604 CRB………………………………… 15

*United States v. Meillier*,
  650 F. Supp. 2d 887, 897-98 (D. Minn. 2009)………………………16

*United States v. Mitchell*,
  624 F.3d 1023, 1029 (9th Cir. 2010)………………………………...9

*United States v. Parish*,
  308 F.3d 1025, 1031 (9th Cir. 2002) ………………………………… .8

*United States v. Polito*,

     215 F. App'x 354 (5th Cir. 2007)…………………………………………   15

*United States v. Prisel*,

     316 F. App'x 377, 381 (6th Cir. 2008)……………………………………   15

*United States v. Rausch*,

     570 F. Supp. 2d 1295, 1308 (D. Colo. 2008)…………………………….   16

*United States v. Roller,*

     N.D. Cal. No. 5:08-cr-00361 RW……………………………………… 17

*United States v. Rowan*,

     530 F.3d 379, 381 (5th Cir. 2008)………………………………………   15

*United States v. R.V.*,

     157 F. Supp. 3d 207, 232–36 (E.D.N.Y. 2016)……………………………15

*United States v. Stall*,

     581 F.3d 276 (6th Cir. 2009)……………………………………………   15

*Williams v. New York*,

     337 U.S. 241, 247 (1949)………………………………………………  2

**Other Sources**

Cohen, et al., "How Dangerous Are They? An Analysis of Sex Offenders Under
Federal Post-Conviction Supervision," *Federal Probation*, Vol. 80, No. 2
(Sep. 2016), p. 27, Figure 5, available at
*https://www.uscourts.gov/sites/default/files/80_2_4_0.pdf*...................................... 5

Roger Pryzbylski, "Recidivism of Adult Sexual Offenders," U.S. Department of Justice,
Office of Justice Programs, Sex Offender Management Assessment and Planning Initiative
(SOMAPI) Research Brief, July 2015, p. 2, available at
*https://www.smart.gov/pdfs/RecidivismofAdultSexualOffenders.pdf.* ………………4

Human Rights Watch, "No Escape: Male Rape in U.S. Prisons," *available at* https://www.hrw.org/legacy/reports/2001/prison/report4.html#............................  8

U.S. Sent. Commission, Federal Sentencing of Child Pornography Non-Production Offenses (October 2021) at p. 68, available at *https://www.ussc.gov/topic/child-pornography*.......................................................  12

U.S. Sentencing Commission*,* "Recidivism Among Federal Offenders: A Comprehensive Overview (2016)," p. 19-20, available at *http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf*...........................  4

U.S. Sentencing Commission, "Public Data Presentation for First Offenders and Alternatives to Incarceration Amendment (Dec. 2016)," p. 20, available at *http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20161209/20160109_DB_alternatives.pdf* ..................................................4

U.S. Sentencing Commission, "Results of Survey of United States District Judges January 2010 Through March 2010," p. 13; available at *https://www.ussc.gov/sites/default/files/pdf/research-and- publications/research-projects-and-surveys/surveys/20100608_Judge_Survey.pdf.* ..................................................  11

## INTRODUCTION

Min-Hao ("Matt") Wu is a first offender before the Court after having pled guilty to possession of child pornography. He understands the harm caused the children used to produce pornography, and he is deeply remorseful about his conduct. He has spent the last year plus since agents raided his home trying to understand what led him to commit the crime, the harms that it causes, and making sure it never happens again. His understanding and efforts are detailed the PSR.     Mr. Wu knows that viewing child pornography is wrong because it necessarily involves children and is an inherently evil process.  He is deeply ashamed of his conduct in viewing the pornography.

Given his lack of any criminal history, his lack of a current addiction to pornography, his lack of a pedophilia diagnosis, is sincere efforts to understand and address his offending, as well as to make restitution, and the impact of his offense on his family, a sentence of house arrest with 5 years supervised release.

## STATEMENT OF FACTS

Mr. Wu viewed and downloaded pornography for his personal use. He also passively allowed his computer to be used by others as a sharing device but never personally or actively shared pornography with anyone else.

Mr. Wu voluntarily unlocked his computer for federal authorities when they arrived at his house so they could access it and ensure they understood the full extent of his offense. PSR ¶ 14. He also admitted to viewing and downloading pornography.

///

///

1

## SENTENCING ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the U.S. Sentencing Guidelines ("U.S.S.G.") is only one factor for district courts to consider in making this judgment and may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. 6 Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

Given the well-known problems with the child pornography Guidelines and the unique and tragic facts of this case, a downward variance from the Sentencing Guideline range is appropriate. Mr. Wu asks this Court to sentence him to house arrest with five years of supervised release.

**A. Seriousness of the Offense, Respect for the Law and Just Punishment.**

The Supreme Court has explained the factors in § 3553(a)(2)(A)—the seriousness of the offense," the need "to promote respect for the law" and "provide just punishment for the offense"—are the sentencing rationale of "retribution." *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("a court may not take account of retribution (the first purpose listed in 3553(a)(2)) when imposing a term of supervised release") (emphasis omitted). "The goal of retribution" is

the "interest[] in seeing that the offender is repaid for the hurt he caused." *Kennedy v. Louisiana*, 554 U.S. 407, 442 (2008). Yet, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quotations omitted).

A sentence of house arrest with five years of supervised release takes "into account the real conduct and circumstances" of Mr. Wu, the fact he was a first offender at the time of the offense, and the fact that he is not a future risk.  The mere fact that he was prosecuted, lost his long-time employment with Google, is now a convicted felon, and will have to register as a sex offender are significant collateral consequences of his actions that not only demonstrates the seriousness of the offense but will also encourage others to respect the law.

**B.  Deterring Criminal Conduct and Protecting the Public**

A prison sentence is not necessary to ensure Mr. Wu does not commit another crime or possess child pornography again. Mr. Wu's excellent performance while released over the last two plus years, which includes substantial mental health counseling and treatment (with a psychiatrist, therapist and group meetings) demonstrates that he has taken this extremely seriously and learned his lesson from this ordeal.

Concerning Mr. Wu's risk of recidivism, it is statistically unlikely he will commit another crime again, let alone a new sex offense. According to U.S. Sentencing Commission data, as a first offender—someone with no criminal convictions or arrests of any kind—Mr. Wu is at the lowest risk of recidivism of all federal defendants. In 2016, the Commission conducted an extensive review of recidivism among federal offenders and found that defendants in criminal

3

history category I had a rearrest rate of 33.8%, lowest of all federal offenders.[1] Within

individuals in criminal history category I, offenders with zero criminal history points as opposed

to one criminal history point had an even lower rearrest rate of 30.2%, compared to 46.9% for

defendants with one criminal history point. A more recent Sentencing Commission report

demonstrates that defendants with no criminal history whatsoever—like Mr. Wu—had the lowest

rates of rearrest, reconviction and reincarceration of all federal defendants: only 25.7% were

rearrested, 14.7% reconvicted, and 4.1% reincarcerated.[2] Those rates are significantly lower than

other defendants in criminal history category I, who nonetheless have some criminal history.

When it comes to sex offenses, the Department of Justice ("DOJ") itself has found

"sexual recidivism rate" for sex offenders is significantly lower than the general recidivism rate

overall. That is, sex offenders, regardless of type, have "lower overall recidivism that non-sexual

offenders." The DOJ's own data suggests that Mr.Wu is unlikely to commit another crime, let

alone a sex crime.[3]

A detailed study by Federal Probation further supports this point. Probation

analyzed approximately 7,416 male sex offenders released from the BOP and placed on

---

[1]   U.S. Sentencing Commission, "Recidivism Among Federal Offenders: A Comprehensive Overview (2016)," p. 19-20, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

[2]   U.S. Sentencing Commission, "Public Data Presentation for First Offenders and Alternatives to Incarceration Amendment (Dec. 2016)," p. 20, *at* http://www.ussc.gov/sites/default/files/pdf/ amendment- process/public-hearings-and-meetings/20161209/20160109_DB_alternatives.pdf.

[3] Roger Pryzbylski, "Recidivism of Adult Sexual Offenders," U.S. Department of Justice, Office of Justice Programs, Sex Offender Management Assessment and Planning Initiative (SOMAPI) Research Brief, July 2015, p.2, available at: https://www.smart.gov/pdfs/RecidivismofAdultSexualOffenders.pdf.

4

supervised release between 2007 and 2013. It further split sex offenders into four categories based on their underlying federal offense: child pornography, transportation for illegal sexual activity, sexual abuse or assault, and Sex Offender Registration and Notification Act ("SORNA") violations. Probation compared recidivism rates for all four categories of sex offenders to recidivism rates for approximately 180,000 male non-sex offenders placed on supervised release during the same time. Probation found that sex offenders had lower recidivism rates that offenders convicted of non-sex offenses.[4]

Probation noted that offenders like Mr. Wu "convicted of child pornography exhibited lower general and violent rearrest rates and supervision revocations compared to offenders convicted of SORNA or sexual assault. *Id*. at p. 29.

Nor is a prison sentence necessary to protect the public. Mr. Wu has never engaged in hands on contact with a minor. Mr. Wu has not possessed child pornography in the two years since agents searched his house in May 2019. The combination of sex offender registration and intensive supervision by the Probation office, including Internet monitoring and mandated counseling and therapy, ensures Mr. Wu is closely scrutinized. Thus, there is no need to send him to prison.

**C. Providing Training, Medical Care, and Other Treatment**

The "purposes of sentencing include not only punishment and deterrence, but also the provision of treatment to a defendant in need of it." *United States v. Bad Marriage*, 392 F.3d 1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)). But Congress has cautioned courts

---

[4] Cohen, et al., "How Dangerous Are They? An Analysis of Sex Offenders Under Federal Post-Conviction Supervision," *Federal Probation*, Vol. 80, No. 2 (Sep. 2016), p. 27, Figure 5, *available at* https://www.uscourts.gov/sites/default/files/80_2_4_0.pdf.

to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Instead, the Court must determine "the most effective manner" of getting Mr. Wu treatment. 18 U.S.C. § 3553(a)(2)(D).

The "most effective" way to get Mr. Wu "support services" is by placing him on probation and letting him continue to pay for his private treatment, and connect him to the resources of the Probation office immediately so he can continue working on his mental health challenges.

**D.  The Guideline Sentencing Range**

As detailed in the plea agreement, the base offense level for possessing child pornography is 18 under U.S.S.G. § 2G2.2(a)(1). Dkt. 13, p. 4, ¶ 7. Because Mr. Wu possessed depictions of prepubescent minors, a two-level increase applies under U.S.S.G. § 2G2.2(b)(2). Because the images included depictions of the sexual abuse or exploitation of an infant or toddler, another four levels are added under U.S.S.G. § 2G2.2(b)(4). The fact the crime involved the use of a computer increases the offense level by another two under U.S.S.G. § 2G2.2(b)(6). Finally, because Mr. Wu possessed over 600 images of child pornography, he receives a five-level increase under U.S.S.G. § 2G2.2(b)(7). After factoring in a three-level downward adjustment for acceptance of responsibility under U.S.S.G. 3E1.1(a) and (b), the adjusted offense level is 28 in the plea agreement. At a criminal history category I, that generates an advisory Guideline range of 78-97 months.

But as this Court knows, the Supreme Court has made clear that the ranges recommended by the Sentencing Guidelines are neither mandatory nor presumptively reasonable. Instead, at sentencing courts have an "overarching duty" to "'impose a sentence sufficient, but not greater than necessary'" to comply with the sentencing factors in 18 U.S.C. § 3553(a).

*Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting § 3553(a)). This Guideline range only considers the aggravating factors in Mr.Wu's case.

There are other reasons this Court should vary from the Sentencing Guidelines: Mr. Wu's has sought the psychiatric help as well as therapy to address the sources of his interest in  pornography, the support of his family, his vulnerability to abuse in prison, and the well documented problems with U.S.S.G. § 2G2.2.

**1.   Mr. Wu's Personal History and Characteristics**

Mr. Wu was born in Taiwan and brought to Texas by his mother when he was 12 years old. His father remained in Taiwant to work.

He has two sisters, both of whom reside in the United States, are actively involved in his life, know about the instant offense, and are very supportive.

He did well in school although struggled somewhat because he was still learning English.

He met his wife in college. They have three children under the age of 10. His wife is supportive though obviously very stressed about the prospect of raising her children without him for an extended period of time.

The attached letters from family and friends describe a good man who made a mistake, acknowledges it, and is trying to make amends for it.

Since his offense was discovered, Mr. Wu has made sincere and sustained efforts to address these issues. He has received group and individual sex offender therapy through the Hope Program for the last year.

**2.   Mr. Wu Would Be An Extremely Vulnerable Inmate**

7

"A defendant's unusual susceptibility to abuse by other inmates while in prison" can support a sentencing reduction. *United States v. Parish*, 308 F.3d 1025, 1031 (9th Cir. 2002) (citing *Koon v. United States*, 518 U.S. 81, 111-12 (1996)). In *Parish*, the Ninth Circuit affirmed the district court's decision to grant a defendant a significant sentencing reduction after finding the defendant "was susceptible to abuse in prison because of a "combination" of factors, including "his stature, his demeanor, his naivete, [and] the nature of the offense." 308 F.3d at 1031-1032; *see also United States v. Garcia*, 340 F.3d 1013, 1020 (9th Cir. 2003) (in deciding whether to grant bail pending appeal, district court can consider whether "incarceration would impose exceptional risks on a defendant involving his physical or mental well-being-risks that might arise as a result of the nature of his crime or even as a result of his possessing certain physical, psychological, or other characteristics.").

In its 2001 report on sexual assault in prison, Human Rights Watch revealed a broad range of factors that make inmates particularly vulnerable to rape and sexual assault: "young, small in size, physically weak, white, gay, first offender, possessing 'feminine' characteristics such as long hair or a high voice; being unassertive, unaggressive, shy, intellectual, not street-smart, or 'passive;' or having been convicted of a sexual offense against a minor."[5] Any one of these characteristics will place an inmate at increased risk of sexual abuse; having several of these characteristics further increase the risk.

Mr. Wu should be spared the ordeal of prison. He is a first offender who is unassertive and unaggressive. He is not a street smart and has been convicted of a sexual offense. He would be ripe for abuse in custody.

---

[5] Human Rights Watch, "No Escape: Male Rape in U.S. Prisons," *available at* https://www.hrw.org/legacy/reports/2001/prison/report4.html#

### 3.   A Downward Variance Is Necessary to Account for the Flaws in 2G2.2

In *Kimbrough v. United States*, 552 U.S. 85 (2007) and *Spears v. United States*, 555 U.S. 261 (2009) (per curiam), the Supreme Court explained that district courts have the authority to vary from the advisory Guidelines based on categorical policy disagreements with them, and not just on individualized determinations that they yield an excessive sentence in a particular case. *Kimbrough*, 552 U.S. at 108; *Spears*, 555 U.S. at 842-43. As the Ninth Circuit has elaborated, after *Kimbrough*, district courts "are at liberty to reject *any* Guideline on policy grounds." *United States v. Mitchell*, 624 F.3d 1023, 1029 (9th Cir. 2010) (emphasis in original) (citations and quotations omitted)). It is clear the Guideline ranges generated by U.S.S.G. § 2G2.2 generally and specifically as to Mr. Wu yields an excessive sentence and should thus be rejected. As the U.S. Sentencing Commission itself noted in June 2021, U.S.S.G. § 2G2.2 "no longer effectively differentiates among offenders in terms of either the seriousness of the offense or culpability of the offender."[6]

### a.      2G2.2 Is Not Based On Empirical Data or National Experience

Numerous courts have already determined U.S.S.G. § 2G2.2 is "fundamentally different" from other Guidelines and "unless applied with great care, can lead to unreasonable sentences that are inconsistent with what 3553 requires." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). Like the crack cocaine Guideline, "§ 2G2.2 was not developed pursuant to the [Sentencing] Commission's institutional role and based on empirical data and national experience, but instead was developed largely pursuant to congressional directives." *United States v. Grober*, 624 F.3d 592, 608   (3d Cir. 2010).  The Guidelines for child pornography

---

[6] USSC 2021 CP Report, p. 69.

offenses have increased dramatically over the years and in nearly every instance, Congress

mandated these increases, often over the objection of the Sentencing Commission. *United States*

*v. Henderson*, 649 F.3d 955, 960-62 (9th Cir. 2011). As the Commission itself recently noted,

"§2G2.2, is largely the result of statutory mandatory minimum penalties, congressional directives

to the Commission, and direct amendments to the guideline by Congress."[15] When possession of

child pornography was criminalized in 1990, the Sentencing Commission created a new

guideline for that offense, with a base offense level of ten and a two-level enhancement for

material involving a prepubescent minor. *Henderson*, 649 F.3d at 960. Congress was not

satisfied, however, and in 1991, "over the objection of the Commission," it directed the

Commission to increase the Guideline ranges. *Id*. Among other changes, Congress "explicitly

ordered the Commission" to increase the base offense level to fifteen (for receipt, transportation,

and trafficking) and thirteen (for possession). *Id*. at 961. Congress demanded further increases in

1995, raising the base offense level by two levels and adding a two-level enhancement for use of

a computer. *Id*. When the Sentencing Commission submitted a report to Congress that was

critical of the congressionally mandated two-level computer enhancement because "it failed to

distinguish serious commercial distributors from more run-of- the-mill users," Congress

"responded with legislation that directed the Commission to add enhancements for the use of a

computer persuade, induce, entice, coerce or facilitate the transport of a child; to increase

penalties in any case in which the defendant engaged in a pattern of activity; and to clarify that

distribution included distribution for nonpecuniary gain." *Id*. at 961 (citations omitted).

With the enactment of the 2003 PROTECT Act, "Congress—for the first time and

the only time to date—made direct amendments to the Guidelines." *Id*. (citation omitted). These

amendments included an enhancement for images of sadistic or masochistic conduct and a range

of enhancements based upon the number of images. *Id*. In sum, the child pornography guidelines

10

have been substantively revised nine times in thirty years; most of these revisions were
Congressionally mandated and not the result of empirical study. "The frequent mandatory
minimum legislation and specific directives to the Commission to amend the [G]uidelines make
it difficult to gauge the effectiveness of any particular policy change, or to disentangle the
influences of the Commission from those of Congress." *Id*. (quoting U.S. Sentencing
Commission, "Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal
Criminal Justice System is Achieving the Goals of Sentencing Reform (Nov. 2004)," p. 73).[7]

The escalating Guideline ranges in child pornography cases have caused
"widespread dissatisfaction" among district court judges. *United States v. Apodaca*, 641 F.3d
1077, 1083 (9th Cir. 2011).[17] As one Ninth Circuit judge has noted, "an unduly deferential
application of § 2G2.2 will lead to the vast majority of offenders being sentenced to near the
statutory maximum term," a result which "stands in significant tension with a sentencing judge's
duties 'to consider every convicted person as an individual.'" *Henderson*, 649 F.3d at 965
(Berzon, J., concurring) (citation omitted).

**b**. **Because 2G2.2's Specific Characteristics Apply In Almost Every Case, It Fails to Meaningfully Measure Culpability**

Part of the problem with § 2G2.2 is the fact that the specific offense
characteristic presumably designed to distinguish offenses and offenders apply in virtually every
case, and thus there is little for the Court's to distinguish which defendants are most and least

---

[7]   U.S. Sentencing Commission, "Results of Survey of United States District Judges January
2010 Through March 2010," p. 13; *available at*
https://www.ussc.gov/sites/default/files/pdf/research-and- publications/research-projects-and-
surveys/surveys/20100608_Judge_Survey.pdf.

culpable. The Sentencing Commission explained in 2021 that

> the sentencing enhancements in §2G2.2 have not kept pace with technological advancements. Facilitated by technology, child pornography offenses increasingly involve images in great quantities and of a graphic nature, often depicting the youngest of victims. These factors are already accounted for in §2G2.2 by a series of enhancements that were initially added to target more serious offenses and more culpable offenders. However, the conduct covered by four of the six enhancements—accounting for a combined 13 offense levels—has become so ubiquitous that they now apply in the vast majority of cases sentenced under §2G2.2.

U.S. Sent. Commission, Federal Sentencing of Child Pornography Non-Production Offenses (October 2021) at p. 68, available at https://www.ussc.gov/topic/child-pornography.

For example, three of the enhancements that apply to Mr. Wu—victim under the age of 12, § 2G2.2(b)(2), use of a computer, § 2G2.2(b)(6), and number of images, § 2G2.2(b)(7) which collectively add nine levels to the offense level—applied in more than 90% of all cases sentenced under 2G2.2 in 2020. These enhancements apply in almost every § 2G2.2 case because the "Internet revolution enabled child pornography consumption." *United States v. R.V.*, 157 F. Supp. 3d 207, 232–36 (E.D.N.Y. 2016). "[T]echnological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims," and "as a result of such changes, entry-level offenders now easily can acquire and distribute large quantities of child pornography." *Id.* at 232.

Another district court has noted the "enhancements for use of a computer and images containing children under age twelve are typical of this crime. Further, given the unfortunate ease of access to this type of material in the computer age, compiling a collection with hundreds of images is all too easy, yet carries a 5 level enhancement." *United States v. Hanson*, 561 F. Supp. 2d 1004, 1009 (E.D. Wis. 2008). The same problems plague the four-level enhancement under § 2G2.2(b)(4) for portraying particularly graphic images involving sadistic

conduct, infants, or toddlers. That enhancement applied in 81.5% of all cases sentenced under §

2G2.2 in fiscal year 2020. Yet, that enhancement "applies whether or not the person specifically

intended to possess such material, *see* U.S.S.G. § 2G2.2 cmt. n.2, which seems an odd way of

measuring culpability." *Hanson*, 561 F. Supp. 2d at 1009. That raises troubling issues concerning

intent and knowledge because as one district court observed, the "nature of filesharing software

is such that offenders often have little control over or awareness of the number of images being

downloaded." *United States v. Burns*, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009)

(unpublished). And sure enough, there is no evidence that Mr. Wu looked at those specific files,

deliberately distributed those images to others, or even knew such files existed within the larger

tranche of materials he possessed. Because these enhancements are problematic and generate an

excessive Guidelines range in this case, a downward variance is warranted.

**E.  Avoiding Unwarranted Sentencing Disparities**

   **1.  Most Possession Offenses Are Not Sentenced Within the Guidelines**

While the Court must avoid unwarranted sentencing disparities among defendants

with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing

courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly

situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting

*Gall,* 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

Placing Mr. Wu on house arrest with supervised release distinguishes him from offenders who

produce child pornography or had physical contact with a minor.

Nor would a variance from the Guideline range lead to unwarranted sentencing

disparity. The Sentencing Commission has noted the "non-production child pornography

guideline has been subject to longstanding criticism from stakeholders and has one of the lowest

rates of within-guideline range sentences each year. Courts increasingly apply downward

13

variances in response to the high guideline ranges that now apply to the typical non-production

child pornography offender."  The Ninth Circuit has explained, "[s]entencing courts have ...

expressed comment on the perceived severity of the child pornography [G]uidelines through

increased below-guidelines variance and downward departure rates." *Henderson*, 649 F.3d at

 962; *see also Grober*, 624 F.3d at 603 (citing "numerous district courts across the country [who]

similarly found § 2G2.2 flawed"). According to the data from the Sentencing Commission,

almost 60% of non-production child pornography offenders received a sentence below the

Guideline range in fiscal year 2019.  Thus, a sentence imposed within the Guideline range

calculated under § 2G2.2 is the exception, not the norm.

Figure 10.
Trend in Sentences Relative to the Guideline Range for All §2G2.2 Offenses



Nor would placing Mr. Wu on house arrest lead to sentencing disparity.  The Ninth

Circuit has affirmed non-custodial sentences for defendants convicted of possessing child

pornography. *See United States v. Autery*, 555 F.3d 864, 867-68 (9th Cir. 2009) (affirming

probation sentence for defendant the district court believed "did not fit the profile of a pedophile"

and who was concerned imprisonment would be "disruptive" and "more damaging than the

rehabilitation" the defendant could receive through mental health counseling"). So have other

Circuits. *See United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (affirming one day jail sentence

and ten years of supervised release on defendant with no criminal history who psychologist

deemed was amenable to treatment); *United States v. Duhon*, 541 F.3d 391, 395 (5th Cir. 2008)

(affirming five year probation sentence for defendant with no criminal record who district court

believed did not pose threat to the public and would benefit from continued psychological

treatment); *United States v. Rowan*, 530 F.3d 379, 381 (5th Cir. 2008) (affirming five year

probation sentence on 46-57 month Guidelines; *see also United States v. Prisel*, 316 F. App'x

377, 381 (6th Cir. 2008) (affirming one day jail sentence for defendant who district court

believed "will not benefit from incarceration," "had voluntarily sought counseling" and presented

no danger to children); *United States v. Polito*, 215 F. App'x 354, 356-57 (5th Cir. 2007)

(affirming five year probation sentence for defendant who was 18 years old at time of offense,

had no criminal history, was currently in counseling and working).

      In the Northern District, several first offender child pornography possession

defendants have been placed on probation. *See United States v. Chen*, 3:20-CR-00084-EMC (five

years' probation with six months in the halfway house for 23-year-old defendant); *United States

v. Martin*, 3:17-CR-00604-CRB-2 (five years' probation for aiding and abetting possession of

child pornography); *United States v. Kainne*, 3:14-CR-00218-CRB (five years' probation, with

six months home confinement, on plea agreement Guideline range of 51-63 months and PSR

calculated range of 78-97 months).

      Numerous other sentencing courts outside this district have done the same. *United

States v. E.L.*, 188 F. Supp. 3d 152, 156 (E.D.N.Y. 2016) (granting five years' probation because

defendant's "life will always be shadowed by the stain of a federal felony conviction for a sex-

related crime. Extensive restrictions affecting where he can live and work, and how he will be

15

controlled, will follow him. An incarceratory Guidelines sentence would have an adverse impact on the substantial progress that defendant has already made through his participation in individual and group therapy."); *R.V.*, 157 F. Supp. 3d at 212 (time-served sentence of five days plus supervised release on 78-97 months Guidelines because imprisonment "will strip R.V. of the opportunity to heal through continued sustained treatment"); *United States v. D.M.*, 942 F. Supp. 2d 327, 329 (E.D.N.Y. 2013) (five years' probation on 22-year-old defendant with "a treatable pornography obsession that began in his early teenage years," who "has never acted out against a child or anyone else" and "has undergone nearly two years of successful therapeutic treatment"); *United States v. Meillier*, 650 F. Supp. 2d 887, 897-98 (D. Minn. 2009) (1 day in jail for mentally disabled defendant who was physically and sexually abused as a child); *United States v. Rausch*, 570 F. Supp. 2d 1295, 1308 (D. Colo. 2008) (one day in jail for defendant with multiple health problems and "vulnerability to victimization in prison" when "there is no discernable risk that [defendant] has or will engage in sexual predatory behavior"); *United States v. Bailey*, 369 F. Supp. 2d 1090, 1097 (D. Neb. 2005) (five years' probation for defendant with significant family obligations deemed not dangerous or a "sexual offender"); *see also United States v. Crespo-Rios*, 2015 WL 6394256, *1 (D.P.R. 2015) (time served on 70-87 month Guidelines for defendant suffering from major depression and anxiety because he has been "an active participant in the recovery process" and "a conviction for a sexual offense involving a minor carries with it serious collateral consequences"); *United States v. Mallatt*, 2013 WL 6196946, *13-14 (D. Neb. 2013) (time served and six years of supervised release on 120 month Guidelines for defendant suffering from Asperger's syndrome deemed "low to moderate risk to reoffend and at even lower risk to commit acts of sexual abuse"); *United States v. Cernik*, 2008 WL 2940854, *8-9 (E.D. Mich. 2008) (five years' probation for bipolar defendant in treatment with "no history of predatory behavior toward children" who "could safely and successfully by treated for his disorders in a

16

community setting").

Moreover, defendants have been convicted at trial in this very courthouse of possessing child pornography have received custodial sentences of as little as 24 months. *United States v. Gary Roller*, 5:08-cr-00361-RW (defendant sentenced to 2 years imprisonment after court trial conviction under section 2252(a)(4)(B) - Possession of Material Involving the Sexual Exploitation of Minors).

### 2. The Sentences Recommended by the Prosecution and Probation Would Create Unwarranted Sentencing Disparity And Are More Comparable With Sentences Imposed In Distribution Cases.

The sentence recommended by Probation and the Government are too severe and would actually create unwarranted sentencing disparity.

At least in this district, child pornography distribution offenses receive sentences in the range requested by the government, not mere possession cases.  See., e.g., *United States v. Abel Garcia-DeLeon,* 4:21-cr-00052-YGR (defendant received 10-ear sentence for plea to distribution of child pornography*); United States v. Dyer-Hogan*, 3:19-cr-00554 MMC (defendant sentenced to 10 years imprisonment where he was found to be sex trafficking 13 and 15 year-old girls during his federal trial on child pornography charges).

Indeed, in *United States v. Max Budziak*, 5:08-cr-00284-EJD, the defendant received a 5 year sentence after being convicted of two counts of distribution at a jury trial in this very courthouse. Imposing the kind of sentence recommended by the U.S. Attorney and Probation would create unwarranted disparity.

### F.  Providing Restitution

Mr. Wu has agreed to pay restitution as a condition of his plea agreement. In calculating a restitution award, this Court must calculate the amount "directly and proximately"

caused by Mr. Wu. S*ee Paroline v. United States*, 572 U.S. 434 (2014). That stems from the "bedrock principle that restitution should reflect the consequences of the defendant's own conduct." *Paroline*, 572 U.S. at 455. Mr. Wu requests that restitution be addressed within 90 days of the sentencing hearing pursuant to 18 U.S.C. § 3664(d)(5). Additionally, to facilitate the payment of restitution, Mr. Wu will ask this Court to exercise its discretion and waive interest on the restitution amount. *See* 18 U.S.C. § 3612(f)(3)(A) (court may waive interest if it "determines that the defendant does not have the ability to pay interest").

## **CONCLUSION**

Mr. Wu made a serious mistake that will result in him being a convicted felon and require him to register as a sex offender, likely for the rest of his life. There is no need to incarcerate Mr. Wu in a federal prison at this point:  he has already been deterred and has seriously worked to understand his crime, its impact on children, and address the issues that brought him to federal court. He thus asks this Court to sentence him to house arrest, five years of supervised release.

DATED: August 24, 2022                                    Respectfully,

                                                                      _____s/_____
                                                                      ERIK BABCOCK
                                                                      Attorney for MATT WU

18